Jed A. WILLIAMSON, Appellant–
Respondent,

v.

Susan WILLIAMSON, Appellee–
Petitioner.

No. 38A02–0411–CV–915.

Court of Appeals of Indiana.

April 5, 2005.

Benjamin E. Nordmann, Fort Wayne, IN, Attorney for Appellant.

M. Bruce Scott, Tourkow Crell Rosenblatt & Johnson, Fort Wayne, IN, Attorney for Appellee.

## OPINION

SHARPNACK, Judge.

Jed A. Williamson ("Father") appeals the trial court's grant of a petition for modification of child custody filed by Susan Williamson ("Mother") and the trial court's denial of Father's motion to correct error. Father raises three issues, which we restate as:

I. Whether the trial court's modification of custody of one of the parties' children is clearly erroneous;

II. Whether the trial court's child support order is clearly erroneous; and

III. Whether the trial court abused its discretion by denying Father's motion to correct error.

We affirm in part and reverse in part.[1]

The relevant facts follow. The parties were married and had four children, J.W., S.W., Ke.W., born February 10, 1986, and Kr.W., born April 21, 1987. Mother filed a petition for dissolution of marriage on October 16, 1991, which was granted on August 14, 1992. Following various modification requests, the trial court ordered that Mother have custody of S.W. and that Father have custody of Ke.W. and Kr.W. on June 28, 2000.

---

1. We remind Mother that Ind. Appellate Rule 46(B)(1) permits an appellee's brief to omit the statement of facts if the appellee agrees with the statements in the appellant's brief. Here, Mother omitted the statement of facts and agreed with Father's statement of facts. However, in her argument regarding the modification of custody, Mother then presented numerous facts related to the modification that were not present in Father's statement of the facts. These facts would have been more appropriately presented for the first time in Mother's statement of facts rather than in the argument.

On February 11, 2002, Mother filed a petition for change of custody and modification of support. According to Mother's petition, S.W. was married and emancipated, J.W. was enrolled in college and did not reside with either party, and a change in custody for Ke.W. and Kr.W. was in their best interests due to substantial changes in circumstances. The trial court held a hearing regarding S.W.'s emancipation and entered the following order on February 20, 2002:

The parties['] second eldest child, [S.W.], was married on or about July 6, 2000. [Mother] filed a motion to emancipate said child on or about December 5, 2000. On December 3, 2001, [Mother] then filed a request for the Court to modify the child support and to determine the arrearage in support.

[Father] has recently purchased a local Dairy Queen franchise. He has had insufficient time in business to determine his income from that venture. [Father] earlier quit his employment when his position was transferred to another location and he chose not to relocate or commute the distance. [Father's] prior income was $769.00 per week ($40,000.00 per year), which shall be imputed to him at this time. He pays the sum of $19.56 weekly to provide health insurance for the minor children. There was no evidence of work related child care or prior/subsequent children. [Mother's] income remains unchanged at $302.00 per week.

IT IS THEREFORE ORDERED THAT, pursuant to guidelines, [Mother] shall pay the sum of $66.00 each week for the support of the two youngest children now in [Father's] care. Additionally, [Father] shall pay the first $750.00 of any out of pocket medical, dental or other health related expenses incurred annually for the benefit of those minor children. Thereafter, [Mother] shall reimburse [Father] 28% of any additional such expense promptly upon notice and demand.

IT IS FURTHER ORDERED THAT the parties['] daughter, [S.W.], is and was emancipated as of July 7, 2000.

In [Father's] petition to emancipate [S.W.], he specifically asks that the support obligation associated with [S.W.] be terminated. Testimony at hearing by [Father] was that [Mother], with the exception of $69.00 due and owing, was current in all court ordered support payments to the best of his knowledge. Therefore, the Court finds that there exists an arrearage of $5,109.00 as of February 15, 2002, which amount includes the $69.00 previously mentioned, as well as $5,040.00 created by issuance of this order.

IT IS THEREFORE ORDERED THAT the modification of support is made retroactive to December 5, 2000, and [Mother] is ordered to reduce said arrearage by making payments of an additional $24.00 each week in support.

Appellant's Appendix at 548. On March 4, 2002, Mother filed a motion to correct error and alleged that a calculation error had been made in the trial court's order and that her arrearage should have been $1,455.00. On the same day, the trial court set a hearing for Mother's motion to correct error for June 14, 2002.

Father requested a continuance of the hearing, and the trial court reset the hearing for August 19, 2002. On July 23, 2002, the trial court reset the hearing on its own motion for September 16, 2002. On August 19, 2002, Mother's counsel withdrew his appearance, and at the September 16th hearing, Mother requested a continuance. The trial court continued the hearing "until further notice to give [Mother] time to

obtain counsel." Appellant's Appendix at 28.

Following numerous other pleadings and hearings on other matters, on April 8, 2003, Father filed a motion to dismiss Mother's motion to correct error pursuant to Ind. Trial Rule 53.3, alleging that motion was deemed denied because the trial court had failed to set a timely hearing. Again following numerous other pleadings and hearings, the trial court held a hearing regarding Mother's motion to correct error on March 31, 2004, and granted Mother's motion to correct error over Husband's objection. The trial court stated:

> [T]his court set the matter for hearing when the motion to correct errors was filed. It is the recollection of this court that there were consist[ent] assurances by the court that the matter would be heard at [a] later date. This court believes that fundamental fairness trumps sharp practice seven (7) days a week. Although I do understand and acknowledge [Husband's] reliance on the trial rules to try and avoid the relief sought, I am going to grant the motion although over this objection.

Transcript of March 31, 2004 hearing at 5. The trial court found that the arrearage should have been $3,689.00 as of February 15, 2002. Father filed a motion to correct error, alleging that the trial court's grant of Mother's motion to correct error violated Ind. Trial Rule 53.3.

The trial court held hearings on July 13, 2004, August 5, 2004, and September 29, 2004 regarding pending matters, including Mother's February 2002 petition to modify custody and Father's motion to correct error. The trial court then entered the following findings of fact and conclusions thereon:

[Mother] has sought to modify custody of the parties['] youngest child, [Kr.W.].[ [2]] Her motion was filed February 11, 2002.

Actions for modification of child custody are controlled by IC 31–17–2–21. Specifically, before the Court can change custody, there must be a showing that there has been a substantial change in any of the factors found in IC 31–17–2–8. Furthermore, the modification must be in the best interests of the child.

After hearing evidence on the petition, the Court now finds that there have been changes in the factors listed in IC 31–17–2–8.

1. The custody modification that resulted in the child residing with [Father] (made June 28, 2000) occurred shortly after [Kr.W.]'s 14th birthday. [Kr.W.] is now 17 years of age. The record bears no indication that there was a consideration of [Kr.W.]'s age or desires prior to the June, 2000, hearing. While [Kr.W.] may have desired to remain with his mother in June of 2000, the law requires the Court to give more consideration to the wishes of a child 14 years of age or older. [Kr.W.] currently has a strong desire to reside with his mother. IC 31–17–2–8(1) & (3).

2. The relationship between [Kr.W.] and [Father] has been lacking throughout the duration of this divorce. Despite the fact that [Kr.W.] has been in [Father]'s custody since 2000, the relationship has not been mended. Rather, the relationship appears to have worsened to the point where there appears to be almost no emotional bonding between [Kr.W.] and his father. They interact on a very limited basis. There is significant conflict between the two which

---

2. Mother withdrew her request to modify custody of Ke.W.

has not been appropriately addressed and communication between them is at, what appears to be, an all time low. IC 31–17–2–8(4).

3. [Kr.W.] has developed what appears to be a positive and rewarding relationship with Philip Snell, [Mother]'s spouse. Mr. Snell was not a part of the family in June, 2000. [Kr.W.] and Mr. Snell appear to be able to communicate appropriately and engage in family appropriate social activities together. Conversely, it is apparent that [Kr.W.] suffers a poor relationship with Dorothy Williamson, [Father]'s current spouse. IC 31–17–2–8(4).

4. [Kr.W.] is an excellent student. He has performed well at his current high school. The Court has no concerns of his ability to perform as well at any school he attends. IC 31–17–2–8(5).

5. [Kr.W.] maintains a relatively positive relationship with his brother, [Ke.W.]. However, inasmuch as the two have grown older, they do not interact to the same degree as they once did. Rather, they have begun to socialize more with their respective peer groups. It is further apparent that the conflict between [Kr.W.] and [Father] has impacted the relationship between [Kr.W.] and [Ke.W.]. IC 31–17–2–8(4).

6. While spending time at [Mother]'s home, [Kr.W.] has found employment that he appears to enjoy and has developed additional friendships with persons his age near [Mother]'s home. Additionally, while there, [Kr.W.] has undertaken planning for continued education that has not been considered or discussed while living with his father. IC 31–17–2–8(5).

7. During the period of time that [Kr.W.] has been in the custody of [Father], [Father] has occasionally frustrated and discouraged communication between [Kr.W.] and his mother. IC 31–17–2–8(4).

The Court further finds that modification of child custody is in [Kr.W.]'s best interest.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that [Mother] is granted sole custody of the parties['] minor child, [Kr.W.], whose date of birth is April 21, 1987, subject to [Father]'s right of reasonable parenting time.

IT IS FURTHER ORDERED that parenting time shall be as agreed upon by the parties but, in the absence of any agreement, shall be not less than by guidelines. The parties are further directed to structure the weekend, holiday, and extended summer parenting time is such a manner as to allow [Ke.W.] and [Kr.W.] to be in the same homes while parenting time is exercised. To extent necessary, [Mother]'s parenting time with [Ke.W.] is modified to guidelines in order to give effect to this order.

The Court finds that [Mother]'s AGWI is $520.00. The Court imputes an AGWI of $770.00 to [Father]. The Court, having considered the prior parenting time practiced as well as the current parenting time order, now declines to award either party parenting time credit. The record does not allow for a finding of health insurance costs presently incurred for the children.

Pursuant to guidelines, [Mother] should pay [Father] the sum of $75.00 each week for the support of [Ke.W.], whereas [Father] should pay $111.00 each week to [Mother] for the support of [Kr.W.]. The Court now offsets the two support obligations.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that [Father] pay the sum of $36.00 each week to the clerk of the Court as his net contribution for child support. The first such payment of support is due October 8, 2004. It is further ordered that both parties shall provide health insurance coverage for both [Ke.W.] and [Kr.W.], so long as health insurance is reasonably available to them. Each party is to further provide the other with all necessary insurance information with which to make a claim for services.

IT IS FURTHER ORDERED that [Mother] shall pay 40% and [Father] shall pay 60% of any "out of pocket" health care expenses incurred for the benefit of the boys which are not reimbursed by health insurance. Additionally, the parties shall be entitled to claim the children in their respective custody as dependent for purposes of income tax in the tax year 2005 and thereafter, so long as permissible under the tax code.

Appellant's Appendix at 39–42 (footnote added). The trial court did not issue an order regarding Father's motion, and the order was deemed denied pursuant to Ind. Trial Rule 53.3.

## I.

The first issue is whether the trial court's modification of custody of Kr.W. is clearly erroneous. We review custody modifications for an abuse of discretion and have a "preference for granting latitude and deference to our trial judges in family law matters." *Kirk v. Kirk,* 770 N.E.2d 304, 307 (Ind.2002). "We set aside judgments only when they are clearly erroneous, and will not substitute our own judgment if any evidence or legitimate inferences support the trial court's judgment." *Id.* Our supreme court explained the reason for this deference in *Kirk:*

While we are not able to say the trial judge could not have found otherwise than he did upon the evidence introduced below, this Court as a court of review has heretofore held by a long line of decisions that we are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence, or that he should have found its preponderance or the inferences therefrom to be different from what he did.

*Id.* (quoting *Brickley v. Brickley,* 247 Ind. 201, 204, 210 N.E.2d 850, 852 (1965)). Therefore, "[o]n appeal it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by appellant before there is a basis for reversal." *Kirk,* 770 N.E.2d at 307.

Ind.Code § 31–17–2–21(a) governs the modification of a child custody order and provides, in part, that "[t]he court may not modify a child custody order unless: (1) the modification is in the best interests of the child; and (2) there is a substantial change in one (1) or more of the factors that the court may consider under [Ind. Code § 31–17–2–8]...." Ind.Code § 31–17–2–8 lists the following factors:

(1) The age and sex of the child.

(2) The wishes of the child's parent or parents.

(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4) The interaction and interrelationship of the child with:

(A) the child's parent or parents;

(B) the child's sibling; and

(C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to the child's:

(A) home;

(B) school; and

(C) community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

(8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 8.5(b) of this chapter.

In the initial custody determination, both parents are presumed equally entitled to custody, but a petitioner seeking subsequent modification bears the burden of demonstrating the existing custody should be altered. *Kirk,* 770 N.E.2d at 307. Several of the above factors are implicated here. We will address the relevant factors separately.

A. *Kr.W.'s wishes.*

■ The trial court was required to consider the "wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age." Ind.Code § 31–17–2–8(3). On this issue, the trial court found:

The custody modification that resulted in the child residing with [Father] (made June 28, 2000) occurred shortly after [Kr.W.]'s 14th birthday. [Kr.W.] is now 17 years of age. The record bears no indication that there was a consideration of [Kr.W.]'s age or desires prior to the June, 2000, hearing. While [Kr.W.] may have desired to remain with his mother in June of 2000, the law requires the Court to give more consideration to the wishes of a child 14 years of age or

older. [Kr.W.] currently has a strong desire to reside with his mother.

Appellant's Appendix at 40.

Father first argues that Kr.W. wished to live with Mother at the time of the 2000 modification and still wishes to live with Mother; thus, according to Father, there has been no substantial change in Kr.W.'s wishes. It appears that the trial court made a slight calculation error because the record indicates that Kr.W. was born on April 21, 1987, and, thus, Kr.W. would have been thirteen years old at the time of the last modification. Consequently, the trial court would not have been required to consider Kr.W.'s wishes at the last modification but was required to consider Kr. W.'s wishes during this modification. As a result, the trial court properly placed more consideration on Kr.W.'s wishes at the time of this modification request than on his wishes at the prior modification.

■ Father also relies on our long-standing rule that a change in the child's wishes, standing alone, cannot support a change in custody. *Joe v. Lebow,* 670 N.E.2d 9, 25 (Ind.Ct.App.1996). While we agree that Kr.W.'s wishes, standing alone, would not support a modification of custody, we conclude that the trial court properly found that another factor also supported a change in custody.

B. *Kr.W.'s interactions and interrelationships.*

■ The next relevant factor that the trial court was required to consider was Kr.W.'s interaction and interrelationship with his parents, siblings, and other persons who may significantly affect his best interests. I.C. § 31–17–2–8(4). The trial court made several findings relevant to this factor. First, the trial court found:

The relationship between [Kr.W.] and [Father] has been lacking throughout the duration of this divorce. Despite

the fact that [Kr.W.] has been in [Father]'s custody since 2000, the relationship has not been mended. Rather, the relationship appears to have worsened to the point where there appears to be almost no emotional bonding between [Kr.W.] and his father. They interact on a very limited basis. There is significant conflict between the two which has not been appropriately addressed and communication between them is at, what appears to be, an all time low. IC 31–17–2–8(4).

Appellant's Appendix at 40. The trial court also found that "it is apparent that [Kr.W.] suffers a poor relationship with Dorothy Williamson, [Father]'s current spouse." *Id.*

Father argues that his relationship with Kr.W. was bad at the time of the last modification and is still bad now; thus, according to Father, no substantial change in this factor was demonstrated. We disagree. While the evidence indicated that Father and Kr.W. had a strained relationship since before the last modification of custody, the evidence indicated that the relationship has further deteriorated. In 2003, Kr.W., upset because his father had interfered with a telephone call from his mother, left the house and walked thirteen miles to the sheriff's department. Kr.W. testified that his relationship with his father is "basically nothing," and they do not communicate. Appellant's Appendix at 135. Further, Kr.W. does not "get along" with Dorothy, Father's wife, and he does not feel welcome in Father's home. *Id.* at 72. After reviewing the record, we conclude the trial court's finding that the deterioration in Kr.W.'s strained relationship with Father and Father's wife is a substantial change is not clearly erroneous.

█ Second, the trial court found:
[Kr.W.] has developed what appears to be a positive and rewarding relationship

with Philip Snell, [Mother]'s spouse. Mr. Snell was not a part of the family in June, 2000. [Kr.W.] and Mr. Snell appear to be able to communicate appropriately and engage in family appropriate social activities together. . . . IC 31–17–2–8(4).

Appellant's Appendix at 40. Father argues that this finding did not support a change in custody because changes in a non-custodial parent's conditions do not warrant a modification in custody. We addressed this concept in *Bryant v. Bryant,* 693 N.E.2d 976, 979 (Ind.Ct.App. 1998), *reh'g denied, trans. denied.*

Under the former custody modification statute, a trial court could not grant a modification petition based solely on an improvement in the non-custodial parent's lifestyle, including the parent's remarriage. *See Joe v. Lebow,* 670 N.E.2d 9, 19 (Ind.Ct.App.1996) (citations omitted). That rule was premised on the assumption that because stability of custody is in the child's best interest, changes in custody are to be granted only upon a strict showing that the change is necessary for the child's welfare. *Id.* However, improvements in the non-custodial home are now proper considerations under the revised modification standard. *Id.*

Nevertheless, *Joe* emphasizes that the policy of stability remains a guiding factor in determining whether a custody order should be modified. *Id.* at 20–21. As such, trial courts should still consider the reasonableness of the original decree in determining the child's best interests and in weighing the child's need for stability against any benefit to be derived from modified custody. Thus, even under the revised standard, we conclude that the non-custodial parent's remarriage does not in itself constitute a change in circumstances sufficient to

support a change in custody. To hold otherwise would subject the custody order to one or more modifications as each parent remarries. While changes in the non-custodial household, including remarriage, may now be considered, substantial factors other than remarriage must also be present.

*Id.* (footnotes omitted). Consequently, the trial court was permitted to consider changes in Mother's household, including Kr.W.'s relationship with his stepfather. However, the trial court's modification of custody could not be based solely upon changes in Mother's household.

■ Third, the trial court found:

During the period of time that [Kr.W.] has been in the custody of [Father], [Father] has occasionally frustrated and discouraged communication between [Kr.W.] and his mother. IC 31–17–2–8(4).

Appellant's Appendix at 41.[3] Father argues that his interference with communication between Mother and Kr.W. does not support a change in custody. Generally, a lack of cooperation or isolated acts of misconduct by a custodial parent cannot serve as a basis for the modification of child custody. *Hanson v. Spolnik,* 685 N.E.2d 71, 78 (Ind.Ct.App.1997), *trans. denied.* "However, this court has held that a parent's egregious violation of a custody order or behavior towards another parent, which places a child's welfare at stake, can support a trial court's modification of its custody order." *Id.* The trial court made no findings that Father's interference with communication between Mother and Kr.W. was egregious or placed Kr.W.'s welfare at stake. Thus, this finding would not support a change of custody.

■ In summary, the evidence reflects a substantial change due to the deterioration in Kr.W.'s strained relationship with Father and Father's wife. Further, the trial court properly considered Kr.W.'s wishes to live with Mother and changes to Mother's household. Father does not challenge the trial court's finding that modification was in Kr.W.'s best interests. Consequently, we conclude that the trial court's modification of custody for Kr.W. is not clearly erroneous. *See, e.g., Haley v. Haley,* 771 N.E.2d 743, 750 (Ind.Ct.App. 2002) (holding that the trial court did not err by modifying custody).

## II.

The next issue is whether the trial court's child support order is clearly erroneous. "We place a 'strong emphasis on trial court discretion in determining child support obligations' and regularly acknowledge 'the principle that child support modifications will not be set aside unless they are clearly erroneous.' " *Lea v. Lea,* 691 N.E.2d 1214, 1217 (Ind.1998) (quoting *Stultz v. Stultz,* 659 N.E.2d 125, 128 (Ind. 1995)).

The trial court found that "[Mother]'s AGWI is $520.00" and "impute[d] an

---

3. The trial court also found:

[Kr.W.] maintains a relatively positive relationship with his brother, [Ke.W.]. However, inasmuch as the two have grown older, they do not interact to the same degree as they once did. Rather, they have begun to socialize more with their respective peer groups. It is further apparent that the conflict between [Kr.W.] and [Father] has impacted the relationship between [Kr.W.] and [Ke.W.]. IC 31–17–2–8(4).

Appellant's Appendix at 40–41. Father argues that this was not a substantial change since, as the trial court found, Kr.W. and Ke.W. maintain a positive relationship. It is apparent that the trial court found some changes in the relationship between Kr.W. and Ke.W. Although these changes by themselves may not have been substantial, we have concluded that the trial court's findings of substantial changes to other factors are not clearly erroneous.

AGWI of $770.00 to [Father]." Appellant's Appendix at 41. Thus, "[p]ursuant to guidelines, [Mother] should pay [Father] the sum of $75.00 each week for the support of [Ke.W.], whereas [Father] should pay $111.00 each week to [Mother] for the support of [Kr.W.]." *Id.* at 41–42. The trial court offset the two support obligations and ordered Father to pay $36.00 per week in support.

██ Father argues that the trial court improperly imputed a weekly income of $770.00 to him.[4] According to Father, he presented evidence that "[t]he income for [his] entire household in 2003 was $38,197.00" and "[his] Wife was responsible for $39,980.17 of this amount." Appellant's Brief at 28. Thus, Father argues that the trial court's imputation of a weekly income of $770.00 was contrary to the evidence.

██ At the trial, Father presented evidence that he is self-employed, that he and his wife are owners of a Dairy Queen restaurant that operates eight months every year, and that he owns an apartment house. However, Father contends that, based upon his tax returns, he has no income. The trial court's imputation of income was apparently based upon its February 29, 2002, order where the trial court found:

> [Father] has recently purchased a local Dairy Queen franchise. He has had insufficient time in business to determine his income from that venture. [Father] earlier quit his employment when his position was transferred to another location and he chose not to relocate or commute the distance. [Father's] prior income was $769.00 per week ($40,000.00 per year), which shall be imputed to him at this time.

Appellant's Appendix at 548.

██ The child support guidelines specifically address how to calculate weekly gross income from self-employment and provide:

> Weekly Gross Income from self-employment, operation of a business, rent, and royalties is defined as gross receipts minus ordinary and necessary expenses. In general, these types of income and expenses from self-employment or operation of a business should be carefully reviewed to restrict the deductions to reasonable out-of-pocket expenditures necessary to produce income. These expenditures may include a reasonable yearly deduction for necessary capital expenditures. *Weekly gross income*

---

4. Father also argues that the trial court committed error by entering the child support order in absence of a signed, verified child support obligation worksheet from either party. Ind. Child Support Guideline 3(B)(1) provides that "[i]n all cases, a copy of the worksheet which accompanies these Guidelines shall be completed and filed with the court when the court is asked to order support…. Worksheets shall be signed by both parties, not their counsel, under penalties for perjury." However, we have held that while the child support guideline "does state that the parties 'shall' file a worksheet, it does not state the consequence of failing to file one." *Dye v. Young*, 655 N.E.2d 549, 550 (Ind.Ct. App.1995) We held that the failure to file a worksheet does not prevent a trial court from entering a support award; rather, it prevents the noncomplying party from challenging the income figures arrived at by the trial court. *Id.* at 550–551. We have on occasion remanded to the trial court where we were unable to review a trial court's order because no financial declaration forms or child support worksheets were submitted to the court. *See, e.g., Tatum v. Tatum,* 773 N.E.2d 371, 374 (Ind.Ct.App.2002), *reh'g denied, trans. denied.* However, here, the trial court was provided with Mother's pay stubs, Father's tax returns, and other information regarding Father's assets. Thus, despite the parties' failure to submit child support worksheets, we will review the trial court's determination regarding the child support.

*from self-employment may differ from a determination of business income for tax purposes.*

Expense reimbursements or in-kind payments received by a parent in the course of employment, self-employment, or operation of a business should be counted as income if they are significant and reduce personal living expenses. Such payments might include a company car, free housing, or reimbursed meals.

The self-employed shall be permitted to deduct that portion of their F.I.C.A. tax payment that exceeds the F.I.C.A. tax that would be paid by an employee earning the same Weekly Gross Income.

Ind. Child Support Guideline 3(A)(2) (emphasis added). Although Father bases his argument upon his tax returns, the guidelines note that weekly gross income from self-employment may be different than a determination of business income for tax purposes. Father did not submit a calculation of his gross receipts minus ordinary and necessary expenses.

The commentary to the guidelines also provides that "[i]f one or both parents have no income, then potential income may be calculated and used as weekly gross income." Commentary to Guideline 3(A). The trial court here determined that Father was capable of earning an income of $770.00 per week based upon his prior employment and imputed that amount to Father. Given Father's failure to submit a calculation of his gross receipts minus ordinary and necessary expenses resulting from his self-employment and his argument that he has no income, we cannot say that the trial court's imputation of income to Father is clearly erroneous. *See, e.g., Macher v. Macher,* 746 N.E.2d 120, 127 (Ind.Ct.App.2001) (holding that the trial court's imputation of income to the self-employed father was not clearly erroneous).

III.

The final issue is whether the trial court abused its discretion by denying Father's motion to correct error regarding an arrearage for child support. A trial court has wide discretion to correct errors, and we will reverse only for an abuse of that discretion. *Kashman v. Haas,* 766 N.E.2d 417, 419 (Ind.Ct.App.2002). An abuse of discretion occurs when the trial court's action is against the logic and effect of the facts and circumstances before it and the inferences that may be drawn therefrom. *Id.*

Father's argument concerns the denial of his motion to correct error in which he argued that Mother's motion to correct error should have been deemed denied pursuant to Ind. Trial Rule 53.3. Ind. Trial Rule 53.3 provides that:

(A) In the event a court fails for forty-five (45) days to set a Motion to Correct Error for hearing, or fails to rule on a Motion to Correct Error within thirty (30) days after it was heard or forty-five (45) days after it was filed, if no hearing is required, the pending Motion to Correct Error shall be deemed denied. Any appeal shall be initiated by filing the notice of appeal under Appellate Rule 9(A) within thirty (30) days after the Motion to Correct Error is deemed denied.

(B) Exceptions. The time limitation for ruling on a motion to correct error established under Section (A) of this rule shall not apply where:

(1) The party has failed to serve the judge personally; or

(2) The parties who have appeared or their counsel stipulate or agree on record that the time limitation for ruling set forth under Section (A) shall not apply; or

(3) The time limitation for ruling has been extended by Section (D) of this rule.

(C) Time of ruling. The time at which a court is deemed to have ruled shall be as set forth in Trial Rule 53.1(C).

(D) Extension of time for ruling. The Judge before whom a Motion to Correct Error is pending may extend the time limitation for ruling for a period of no more than thirty (30) days by filing an entry in the cause advising all parties of the extension. Such entry must be in writing, must be filed before the expiration of the initial time period for ruling set forth under Section (A), and must be served on all parties. Additional extension of time may be granted only upon application to the Supreme Court as set forth in Trial Rule 53.1(D).

According to Father, after the trial court continued the September 16, 2002 hearing to allow Mother to retain counsel, the trial court failed "for forty-five (45) days to set a Motion to Correct Error for hearing." T.R. 53.3(A). Thus, according to Father, Mother's motion was deemed denied on November 1, 2002, forty-five days after September 16, 2002.

We addressed the hearing requirement of Ind. Trial Rule 53.3 in *Kovacik v. Kovacik*, 631 N.E.2d 509, 511 (Ind.Ct.App.1994). There, on August 19, 1992, the wife filed a motion to correct error. *Id.* at 510. The court set a hearing on the motion for either September 10 or 11, 1992, but the hearing did not take place. *Id.* On February 1, 1993, the wife requested that the hearing be reset. *Id.* A hearing by telephonic conference took place on February 23, 1993, and the court orally granted the wife's motion to correct error. *Id.*

On appeal, the husband argued that the wife's motion was deemed denied because the trial court failed to hold a hearing on the motion within forty-five (45) days of filing. *Id.* at 511. We held that "[t]he rule specifically requires a hearing to be set within forty-five (45) days, not that a hearing actually take place within that timeframe." *Id.* "By requiring only that the hearing be set by a certain date, the rule recognizes that circumstances such as schedule conflicts and court calendar congestion can often unavoidably delay hearings." *Id.* We noted that the wife's motion was filed on August 19 and the trial court set a hearing on the motion for either September 10 or 11, which was twenty-two (22) or twenty-three (23) days later. Although the hearing did not take place until well after the forty-five (45) day period, it was set within the period. Consequently, we rejected the husband's argument regarding Ind. Trial Rule 53.3. We did not address in *Kovacik* whether the trial court was required to reset the hearing within forty-five days of the September hearing.

Later, we again addressed the hearing requirements of Ind. Trial Rule 53.3 in *Ostertag v. Ostertag*, 755 N.E.2d 686, 689 (Ind.Ct.App.2001). There, the trial court entered a decree of dissolution on September 10, 1999, and the wife filed a timely motion to correct error. *Id.* Following a hearing, which was rescheduled several times, the trial court granted the wife's motion to correct in part and entered an amended decree on April 20, 2000. *Id.* Husband then filed a motion to correct error on May 12, 2000. *Id.* On May 24, the trial court reset the original hearing date of June 1 to June 20. *Id.* "The entry on May 24 is the last reference in the record to [the husband's] motion to correct error, and the record is silent as to what occurred, if anything, on June 20." *Id.*

Wife later appealed, and we held:

Here, the record does not reveal what occurred with respect to [the husband's] motion to correct error after the hearing

was rescheduled on May 24, 2000. The record simply reveals that a hearing on the motion was scheduled for June 20. If the hearing was held on that date, then the motion would have been deemed denied on July 20, and [the wife's] appeal would be untimely. On the other hand, the hearing may have been canceled anytime between May 24 and June 20. *On this record, we have no means of determining whether the hearing was rescheduled within forty-five days.* Further, in her Statement of the Case, [the wife] claims that the hearing on the motion to correct error was continued to October 17. The record reveals, however, that the motion to correct error was not addressed during the October 17 hearing.

*Id.* at 687 (emphasis added). We concluded that the wife had failed to demonstrate that she timely filed her appeal and dismissed the appeal. *Id.*

 Judge Sullivan dissented and wrote, "I can find no support for the majority's position that a hearing must be rescheduled within forty-five days of the original hearing date. Indeed, the case law seems to indicate quite the contrary." *Id.* at 688. Judge Sullivan analyzed *Kovacik* and concluded:

> While the *Kovacik* court did not specifically address Wife's request to reset the hearing that was never held, it impliedly held that the rescheduling was permissible and that only the initial setting had to be completed within forty-five days. There was no indication that the hearing had to be rescheduled within forty-five days of the date it was originally set. In fact, under the facts of *Kovacik*, such a ruling would have been fatal to Wife's appeal, as she did not even request the hearing to be rescheduled until almost five months had passed

since the originally scheduled hearing date.

*Id.* at 688–689. Thus, Judge Sullivan concluded that "*Kovacik* seems to allow for a seemingly indefinite period of time to elapse before a hearing on a motion to correct error need be rescheduled, so long as the original hearing was set within forty-five days after the motion was filed." *Id.* at 689. However, Judge Sullivan acknowledged:

> Were I writing upon a clean slate, I might agree with the majority and set a definite time limit upon when a motion to correct error must be rescheduled. Such a rule would provide a bright line for parties and trial courts to follow. However, I cannot reconcile such a rule with the holding in *Kovacik*. Also, the holding of our Supreme Court in *Cavinder Elevators Inc. [v. Hall,* 726 N.E.2d 285 (Ind.2000) ], suggests an inclination to avoid bright-line rules such as that proposed by the majority. *See* 726 N.E.2d at 289.

*Id.* at 689 n. 5. While there might be a conflict between *Kovacik* and *Ostertag,* we note that *Kovacik* did not specifically address whether the trial court was required to reschedule a continued hearing within forty-five days. Further, the purpose of rules such as Ind. Trial Rule 53.3 is "to require trial courts to act promptly upon filed motions and to afford litigants relief when the trial courts fail to do so." *State ex rel. Everroad v. Westhafer,* 445 N.E.2d 88, 90 (Ind.1983) (discussing Ind. Trial Rule 53.1); *see also State ex rel. Koppe v. Cass Circuit Court,* 723 N.E.2d 866, 868 (Ind.2000) (holding that "[t]he overall purpose of Trial Rules 53.1 and 53.2 is to expedite litigation"). It would be inconsistent with this purpose to require only the original hearing date to be set within forty-five days. Thus, we agree with the majority in *Ostertag* and conclude that,

after granting a continuance, a trial court is required to set a new hearing date on a motion to correct error within forty-five days.

Here, after Mother filed her motion to correct error, the trial court complied with Ind. Trial Rule 53.3 and timely set a hearing within forty-five days. This hearing was continued once at Father's request and once on the trial court's own motion.[5] The hearing was set for September 16, 2002; however, Mother's counsel had recently withdrawn, and at the hearing, the trial court granted Mother an indefinite continuance to obtain new counsel. The trial court did not reset the hearing date within forty-five days of the September 16, 2002 continuance and, in fact, did not hold the hearing until March 31, 2004. Although there is no indication in the record provided to us that Father objected to this continuance, there is also nothing in the record to indicate that Father and Mother stipulated or agreed on the record that the trial court was not required to set a hearing within forty-five days. *See* T.R. 53.3(B)(2); *see, e.g.*, *Trisler v. Executive Builders, Inc.*, 647 N.E.2d 390, 393–394

(Ind.Ct.App.1995) (rejecting a party's argument that the deemed denied provisions of Ind. Trial Rule 53.3 were suspended while the parties "embarked on a course of repetitive stipulations" and "participated in telephonic settlement conferences"), *trans. denied.* Further, there is no evidence in the record to indicate that any of the other Ind. Trial Rule 53.3 exceptions apply.

■ Because the deemed denied provisions of Ind. Trial Rule 53.3 are "automatic" and "self-activating upon the passage of the requisite number of days," the trial court had no power to rule on Mother's motion to correct error because the motion had already been deemed denied. *Id.* Consequently, we conclude that the trial court was without authority to grant Mother's motion to correct error in March 2004.[6] In doing so, we recognize that the trial court had been inundated with various motions and hearings from these parties and had often been required to continue hearings because of insufficient time to address each of the parties' numerous motions and arguments. However, we are constrained to apply Ind. Trial Rule 53.3 as it is written. As a result, we conclude

---

5. The dissent contends that Father invited any error because the first setting of the hearing was outside of the forty-five-day period and was continued at Father's behest. However, Mother filed her motion to correct error on March 4, 2002, and, on the same day, the trial court set the hearing for June 14, 2002. The trial court set the hearing within the 45–day period required by Ind. Trial Rule 53.3. Although the hearing was set for a date outside of the 45–day period, this is permissible under *Kovacik*.

6. The dissent contends that the hearing on Father's motion to correct error was also set outside of the 45–day period required by Ind. Trial Rule 53.3. However, the trial court ruled on Mother's motion to correct error on March 31, 2004, and Father filed his motion to correct error on April 28, 2004. On April 29, 2004, the trial court set the hearing for July 13, 2004. The July 13, 2004, hearing

concerned all pending matters, including Father's motion to correct error. On July 13, 2004, the trial court continued the hearing to August 5, 2004, because it had insufficient time to address all of the pending matters. On August 5, 2004, the trial court again continued the hearing to September 29, 2004. On September 29, 2004, the trial court heard argument on Father's motion to correct error. *Kovacik* provides that the hearing is only required to be *set* within 45 days, not *held* within 45 days. *Kovacik*, 631 N.E.2d at 511. Each of the hearings was properly set within the 45–day period. Further, Mother has never argued that Father's motion to correct error was untimely under Ind. Trial Rule 53.3. *See, e.g.*, *Cavinder Elevators v. Hall*, 726 N.E.2d 285 (Ind.2000) (holding that a belated grant of a motion to correct error is voidable, not void and the belated grant can be waived by failing to promptly appeal).

that the trial court abused its discretion by denying Father's motion to correct error.

For the foregoing reasons, we affirm the trial court's modification of child custody and reverse the denial of Father's motion to correct error.

Affirmed in part and reversed in part.

FRIEDLANDER, J. concurs.

BAKER, J. concurs in part and dissents in part with separate opinion.

BAKER, Judge, concurring in part and dissenting in part.

I fully concur with the majority's holding that the trial court properly modified custody as to Kr.W. and the holding as to the child support order. However, I cannot agree with its finding that Trial Rule 53.3 operated to preclude the trial court's authority to grant Mother's motion to correct error.

In my view, three reasons exist for affirming the trial court's determination: 1) The existing case law does not impose a "bright-line rule" that would render all belatedly granted motions void; 2) Father did not object to the later settings, and, notably, the first postponement was at Father's request; thus, Father acquiesced in and invited any error; and 3) the trial court's determination as to Mother's arrearage was incorrect, and its continuing jurisdiction over child support matters would extend to arrearage determinations.

First, the current state of the law, as expressed in *Cavinder Elevators, Inc. v. Hall*, 726 N.E.2d 285, 288 (Ind.2000), provides that "enforcement of the 'deemed denied' provision of Trial Rule 53.3(A)" is not self-executing so as to render the belated grant of a motion to correct error a nullity. Rather, a belated grant of the motion is "voidable" if the opposing party promptly appeals. *Id.* When a defendant

fails "to promptly appeal this belated grant, such failure would constitute waiver and would have precluded a subsequent appellate claim that the motion to correct error was denied under Trial Rule 53.3(A)." *Id.* Further, the court recognized that "[w]hen a trial court considers and grants a motion to correct error, even if done belatedly, we perceive that such a decision will typically be correct on the merits and will result in expeditious further proceedings, without an intervening appeal." *Id.*

I believe the overarching theme in *Cavinder* is that form should not be elevated over substance. Here, the trial court's decision granting the motion acknowledged such; the court specifically stated: "fundamental fairness trumps sharp practice...." Tr. March 31, 2004 p. 5. Moreover, as was noted in *Cavinder*, the trial court in this instance granted the motion because its original order was incorrect. Accordingly, while I do not subscribe to the view that Trial Rule 53.3 establishes a "bright-line" rule, even if such a rule is well-advised, this would not be the case in which to advance its virtues.

Second, there is no indication that Father objected to the trial court's continuances of the hearing on Mother's motion to correct error. In fact, the first setting of the hearing was continued at Father's behest. A party may not take advantage of an error that he commits, invites, or which is the natural consequence of his own neglect or misconduct. *Batterman v. Bender*, 809 N.E.2d 410, 412 (Ind.Ct.App.2004). Invited error is not subject to review by this court. *Id.* Here, Father acquiesced in and invited any error that could have been predicated upon the time constraints within Trial Rule 53.3.

Third, we have held that a trial court has continuing jurisdiction over matters of child support. *See Hoehn v. Hoehn*, 716

N.E.2d 479, 481 (Ind.Ct.App.1999). As observed in *Straub v. B.M.T.*, 645 N.E.2d 597, 599–600 (Ind.1994), parents cannot contract away the child support benefits of their children—a right that lies exclusively with the child. Thus, some of the conventional temporal limitations applicable to most actions will not apply to child support rights. That concept applies here. By logical extension, the trial court enjoys continuing jurisdiction over child support arrearages. The strict application of time limitations on the trial court's ruling on a matter—at the heart of which lies a ruling on child support—would be an affront to the continuing jurisdiction afforded trial courts.

For these reasons, I would affirm the judgment of the trial court in all respects.