## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 25 2020, 8:40 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Chris M. Teagle
Muncie, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Seth Cristobal, | August 25, 2020 |
| *Appellant-Respondent,* | Court of Appeals Case No. 20A-MI-130 |
| v. | Appeal from the Blackford Superior Court |
| Ashley N. Hudson, | The Honorable John Nicholas Barry, Judge |
| *Appellee-Petitioner.* | Trial Court Cause No. 05D01-1303-MI-65 |

**Tavitas, Judge.**

# Case Summary

S.C. ("Father") appeals the trial court's denial of his petition for emergency custody of one of his two children with A.H. ("Mother"). We affirm.

# Issue

The sole issue on appeal is whether the trial court properly denied Father's petition for emergency custody of one of the parties' children.

# Facts

Mother and Father are the biological parents of H.C. and K.C. ("the Children"). H.C. was born in May 2004, and K.C. was born in July 2012. Although Mother and Father never married, Father executed paternity affidavits "at the time of the births of [the Children]" and is listed as the father on the Children's birth certificates. Father's App. Vol. II p. 14. Until Mother filed a petition for child support on March 12, 2013, no formal child support order was in place regarding the Children.

On April 9, 2013, the trial court entered a child support order wherein it awarded joint legal custody to the parties and primary physical custody to Mother. The trial court also granted Father parenting time to the extent agreed by the parties. On December 21, 2015, on Father's petition to establish a parenting time schedule, the trial court ordered: "[Father] shall have parenting time [ ] each week from Sunday at 6:00 pm. until Wednesday in the am. [sic] when [Father] shall take the [C]hildren to school." *Id.* at 31.

[5] On August 27, 2019, Father filed a petition to modify custody alleging "such a change in circumstances [ ] that physical custody of [K.C.] should be awarded to [Father.]" *Id.* at 78. Father alleged that: (1) K.C. received inadequate care and lacked her own bedroom in Mother's home; (2) "[Father]'s home is a better environment for [K.C.]"; and (3) "it would be in the best interest of [K.C.] if physical custody of [K.C.] was placed with [Father], parenting time per the guidelines [ ] awarded to [Mother], and a child support obligation imposed upon [Mother]." *Id.* at 78-79.

[6] At the scheduled hearing on Father's petition to modify custody on October 18, 2019, the parties informed the trial court that they had reached an agreement on all pending issues. On November 21, 2019, the trial court approved the parties' written agreement wherein: (1) Mother retained primary physical custody, subject to appropriate parenting time for Father; and (2) the Children and Mother were prohibited from "any contact whatsoever with Matthew Johnson."[1] Father's App. Vol. II p. 42.

[7] Five days later, on November 26, 2019, Father filed a petition for emergency custody of K.C., wherein Father alleged that "[Mother] . . . allowed contact between [K.C., Mother and] Matthew Johnson." *Id.* at 84. Father did not seek

---

[1] Mother was romantically involved with Johnson, who has an extensive criminal record that includes convictions for armed robbery, a Class B felony (2007); intimidation, a Class A misdemeanor (2012); and dealing in methamphetamine, a Level 5 felony (2016). *See* Exhibits Vol. I pp. 3, 7, 11.

emergency custody of H.C. On December 3, 2019, and December 16, 2019, the trial court conducted hearings on Father's petition for emergency custody of K.C. Father appeared and was represented by counsel; Mother appeared pro se. Father's wife, Ke.C., testified that: according to K.C., Mother took K.C. to Johnson's house, and Mother punished K.C. for telling Ke.C. and/or Father about the contact. Father testified that he was troubled by Mother's decision to maintain contact with Johnson in violation of the trial court's order.

[8] Next, Mother admitted that, after the trial court prohibited contact with Johnson, Mother took K.C. on an errand to Johnson's home to collect money that Johnson owed to Mother. Mother testified that she parked her vehicle along the curb of Johnson's property and waited in the vehicle with the engine running and her emergency hazard lights activated. Johnson then came outside and gave Mother the money he owed her, and Mother left. Mother testified that neither Mother nor K.C. exited the vehicle, and Johnson did not speak to or otherwise engage with K.C. Mother denied that she punished K.C. for reporting the contact with Johnson.

[9] Mother also acknowledged Johnson's criminal history and admitted that she was pregnant with Johnson's child. Mother testified that she and Johnson ended their relationship in August 2019, and that Mother had since applied for an order of protection against Johnson. Additionally, Mother testified as follows regarding Father's concerns for the Children's safety:

> . . . I have raised these kids for 15 years. . . . I feel like if you are
>   in fear of your child's life or if they're [ ] in any kind of danger,

you're going to want both of your children in your care. Not just one. The fact that [Father] is only wanting one child in his care, tells me that he's really not concerned about the well-being of his kids. [ ] I have no prior arrest. Never been on drugs. Work every day of my life. Provide the care that [the Children] need, the food they need, the housing they need, everything they need. . . . [B]ut for a parent to want one child and only one child, I think that says a lot about that parent. When you're in fear of that child's life, . . . and who they're around and all of that stuff, I think that you should be concerned about both children, and he's not concerned about [H.C.] . . . .

Tr. Vol. I p. 13. At the close of Mother's testimony, Father requested that the trial court should conduct an in camera interview of K.C., alleging a factual issue existed regarding "whether . . . this was just some kind of chance encounter [with Johnson] or if [Mother] willfully violated [the court's] order."[2] *Id*. at 17, 18.

[10] After a discussion with the parties, the trial court declined to conduct an in camera interview of K.C. because: (1) the anticipated line of questioning pertained to the facts surrounding K.C.'s contact with Johnson, and not K.C.'s wishes regarding custody; and (2) Mother refused to consent to the in camera interview. The trial court found that Mother was entitled to be present and to cross-examine K.C. and continued the hearing to allow K.C. to appear. On December 16, 2019, then-seven-year-old K.C. appeared in court. Father called

---

[2] In remarks to the trial court, counsel for Father suggested that Mother misrepresented the extent of the contact with Johnson; and that K.C. would testify that, after Johnson repaid Mother, Johnson accompanied K.C. and Mother on a shopping excursion.

K.C. to testify; however, K.C. was too frightened to testify. Before taking the matter under advisement, the trial court stated on the record:

> Well the [November 21, 2019] Order reads, neither [Mother] nor the parties' children shall have any contact whatsoever with Matthew Johnson. This is a submitted Order [of the parties]. I'm not sure that the Court in a divorce[3] case, can order the petitioner to not to have contact with another adult. Like I said contact, what is contact? Did [K.C.] have contact by just sitting in the car?

*Id*. at 31.

[11] On December 16, 2019, the trial court denied Father's petition for emergency custody and found:

> 2. . . . The Court understands the concern by [Father] on his children having contact with Matthew Johnson. [Father] has established and [Mother] is in seemingly [sic] agreement, that Johnson is a person of low character that should not have contact with [the] [C]hildren. The evidence shows that the [Mother] went to the residence of Johnson in order to obtain money owed to [Mother] by Johnson. . . . [K.C.] was in the car with [Mother] at the time that Johnson tendered the money to [Mother]. [Mother] testified that Johnson did not make contact with [K.C.] and the contact that [Mother] had with Johnson was very brief and the only for [sic] reason for the contact was for receiving the money owed to [Mother] by Johnson. [Father] relies on statements made by [K.C.] in his assertion that the encounter was

---

[3] The instant matter is not a divorce case.

not brief. However, [K.C.] was unable to testify due to [K.C.]'s very young age (7 years).

3. The Court now considers what is in the best interests of the [C]hildren under I.C. 31-[14-13-6] as well as those factors under I.C. 31-[14-13-2] and concludes that primary physical custody, for both children, shall remain with [Mother], subject to the prior orders of the Court regarding the parenting time rights of [Father]. The Court finds that it was very unfortunate that [Mother] even took [K.C.] into the presence of Matthew Johnson. However, the Court finds that the evidence presented shows that [K.C.] did not have contact [with Johnson]. Further, the fact that [K.C.] was in the presence of Johnson does not rise to a continuing or substantial change of circumstances . . . .

Father's App. Vol. II pp. 47-48. Father now appeals.

## Analysis

Father argues that the trial court improperly denied his petition for an emergency modification of custody. We review the denial of a petition to modify custody "for an abuse of discretion, because we give wide latitude to our trial court judges in family law matters." *In re Paternity of J.T.*, 988 N.E.2d 398, 399 (Ind. Ct. App. 2013). An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before it. *In re Adoption of M.H.*, 15 N.E.3d 612, 622 (Ind. Ct. App. 2014).

Appellate deference to the determinations of trial court judges, especially in domestic relations matters, is warranted because of their unique, direct interactions with the parties face-to-face, often over an extended period of time.

*Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011). Inasmuch as trial courts are able to assess credibility and character through both factual testimony and intuitive discernment, trial judges are in a superior position to ascertain information and apply common sense, particularly in the determination of the best interests of the child involved. *Id.* Thus, we neither reweigh the evidence nor reassess witness credibility, and we view the evidence most favorably to the judgment. *Id.* Also, as the moving party seeking a modification of custody, Father bore the burden to demonstrate that the custody arrangement should be modified. *Id.*

[14] Father argues that, given Mother's "egregious violation of the Court's Order[,]" the trial court abused its discretion in denying Father's request for primary, physical custody; and the error was "compounded by" the denial of Father's request for an in camera interview. Father's Br. pp. 6, 7. We initially note that Mother has not filed an appellee's brief. In such cases, we need not undertake the burden of developing an argument for Mother, and we will reverse the judgment if Father establishes prima facie error. *J.H. v. S.S.*, 93 N.E.3d 1137, 1140 (Ind. Ct. App. 2018).

[15] Indiana law provides in relevant part:

The court may not modify a child custody order unless:

(1) modification is in the best interests of the child; and

(2) there is a substantial change in one (1) or more of the factors that the court may consider under [Indiana Code

Section 31-14-13-2] and, if applicable, [Indiana Code
Section 31-14-13-2.5] . . . .

Ind. Code § 31-14-13-6.  The party seeking a custody modification bears the

burden to prove both prongs, by a preponderance of the evidence, before a court

can modify an existing custody arrangement.  *See Steele-Giri v. Steele*, 51 N.E.3d

119, 124 (Ind. 2016).  Indiana Code Section 31-14-13-2 provides:

> The court shall determine custody in accordance with the best
> interests of the child.  In determining the child's best interests,
> there is not a presumption favoring either parent.  The court shall
> consider all relevant factors, including the following:
>
> (1) The age and sex of the child.
>
> (2) The wishes of the child's parents.
>
> (3) The wishes of the child, with more consideration given
> to the child's wishes if the child is at least fourteen (14)
> years of age.
>
> (4) The interaction and interrelationship of the child with:
>
>> (A) the child's parents;
>>
>> (B) the child's siblings; and
>>
>> (C) any other person who may significantly affect
>> the child's best interest.

(5) The child's adjustment to home, school, and community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

(8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in [Indiana Code Section 31-14-13-2.5(b)] . . . .

Ind. Code § 31-14-13-2.

[16] The statutory requirement that a court find a substantial change in at least one Indiana Code Section 31-14-13-2 factor, in addition to determining that modification is in the child's best interests, "signals that the policy of stability" should also guide a trial court's consideration of a petition to modify custody. *Williamson v. Williamson*, 825 N.E.2d 33, 41 (Ind. Ct. App. 2005). "[A] change in circumstances must be judged in the context of the whole environment, and the effect on the child is what renders a change substantial or inconsequential." *In re Marriage of Sutton*, 16 N.E.3d 481, 485 (Ind. Ct. App. 2014).

## I. Best Interests

[17] The first question before the trial court was whether Father met his burden to prove that, due to the contact between K.C. and Johnson, it was in K.C.'s best interests for the trial court to modify physical custody. Regarding the trial

court's determination that a modification of custody was not in K.C.'s best interests, we initially note that, at the time of the December 2019 evidentiary hearings, K.C. was seven years old, and H.C. was fifteen years old. Mother had maintained primary physical custody of both Children since their births. The record further reveals that, in considering whether the custody modification was in K.C.'s best interests, the trial court questioned Mother regarding the extent of K.C.'s contact with Johnson. The following colloquy ensued:

THE COURT: Okay. You admit that you did take [K.C.] around Matthew Johnson?

[MOTHER]: I did.

* * * * *

THE COURT: You went over to his house to get money? [ ]

[MOTHER]: I pulled up. [Johnson] was supposed to bring me out the money. He ran over to the car. Handed me the money, and we left. [ ]

THE COURT: So, [K.C.] didn't speak with him. [K.C.] wasn't in his presence —

[MOTHER]: No. We didn't go into his house—

* * * * *

THE COURT:  [K.C.] wasn't in his presence other than for a brief moment, that period of time for him to bring the money out and to hand it to you through the car window, and you to leave?

[MOTHER]:  Right.

* * * * *

THE COURT:  But my point is, only you had contact with Matthew Johnson?

* * * * *

THE COURT:  Your daughter did not?

[MOTHER]:  [K.C.] did not.  [ ]

THE COURT:  Matthew Johnson did not get into the car?

[MOTHER]:  No.

* * * * *

THE COURT:  Did you put the car in park?  Or was it in drive even?  Do you recall?

[MOTHER]:  It was, I, I think I put it in park.  I even put on the blinkers, because it was on the, like the side of the road.

THE COURT:  But you didn't turn the car off?

[MOTHER]:  No, I did not turn the car off.

THE COURT: Why didn't you turn the car off?

[MOTHER]: Because I was, like I was ready to pull away.

* * * * *

THE COURT: You . . . applied for a protective order [against Johnson] yesterday, correct?

[MOTHER]: Right. Yeah (Affirmative). I signed the papers—

[ ] THE COURT: That was for you and then you asked that the court include [the Children] in that protective order. . . ?

[MOTHER]: Correct.

Tr. Vol. I pp. 15-17.

It is undisputed that Mother violated a direct order of the trial court when Mother took K.C. on an errand to collect money from Johnson after the trial court prohibited such contact. Father cites no authority, nor do we find any, for the proposition that a party's one-time violation of a court order necessitates a modification of custody. Moreover, we fail to see how this instance of isolated and limited contact with Johnson affected K.C.'s best interests.[4]

---

[4] It was Father's prerogative, under the circumstances, to initiate contempt proceedings following Mother's violation of the trial court's order.

"[I]n the context of the whole environment," we decline to second-guess the trial court, which determined that it was not in K.C.'s best interests for the court to modify physical custody based on the evidence presented by Father. *See Sutton*, 16 N.E.3d at 485. The trial court's determination that Father did not prove a modification of custody was in K.C.'s best interests is not against the logic and effect of the facts and circumstances before the court. Thus, the trial court did not abuse its discretion.

## II. *Indiana Code Section 31-14-13-2 factors*

Although Father has not met his burden with respect to the best interests inquiry, we will consider whether there was a substantial change in at least one of the Indiana Code Section 31-14-13-2 factors. We initially note that the trial court did not enter specific findings regarding these factors; however, the trial court was not required to do so. Such findings are only required if requested in writing pursuant to Indiana Trial Rule 52(A). Neither party made such a request. Also, trial courts are presumed to know and follow the applicable law. *See Hecht v. Hecht,* 142 N.E.3d 1022, 1031 (Ind. Ct. App. 2020).

In support of his petition to modify custody of K.C., Father presented evidence that, within five days of the trial court's order prohibiting contact between K.C., Mother, and Johnson, Mother took K.C. to Johnson's house. Father suggested K.C.'s contact with Johnson was extensive; however, K.C. did not contradict Mother's testimony that the contact with Johnson was both brief and limited.

[22] We begin with the first factor—the age and sex of the child. K.C., a girl, was seven years old at the time of the evidentiary hearing. There is no substantial change as to this factor. The second factor is the parties' wishes. Father sought primary physical custody of K.C., due to concerns about Mother's involvement with Johnson in violation of the trial court's order. Father did not seek emergency custody of H.C. and admitted that he had no other safety concerns regarding Mother's care of the Children. On the other hand, Mother: (1) has always maintained primary physical custody; (2) terminated her relationship with Johnson; and (3) sought an order of protection to prohibit Johnson from contacting Mother or the Children. Mother also highlighted Father's failure to seek primary custody of H.C. as evidence that Father does not truly fear for the Children's safety. We find no substantial change regarding this factor.

[23] The third factor pertains to K.C.'s wishes. Indiana Code 34-14-13-2(3) provides that "more consideration [is to be] given to the child's wishes if the child is at least fourteen (14) years of age." Here, K.C. was only seven years old at the time of the evidentiary hearing; thus, her wishes were not among the trial court's primary considerations. Moreover, as the record reveals, K.C. was unable to testify during the proceedings, which supports the inference that K.C. lacked the maturity or understanding to meaningfully contribute. *See* Tr. Vol. I p. 26 (parties agree in open court that the demands of testifying were "a lot for [the] seven year old"). There is no substantial change as to this factor.

[24] The fourth, and most pertinent, factor relates to K.C.'s interaction and interrelationship with the parties, her siblings, and Johnson. K.C. has been in

Mother's primary physical custody for K.C.'s entire life and, thus, has always lived primarily with her brother, H.C. Since December 21, 2015, when the trial court revised Father's parenting time to accomplish a 50-50 split, the Children have divided their time between the parties' households. There is no evidence in the record that either party's home is unsuitable for the Children or that there are any troubling interpersonal dynamics between K.C. and her siblings in either household. Father testified that his only safety concerns stem from Johnson's involvement in Mother's life, and that Father, otherwise, trusts Mother's parenting. Mother testified that she has met the Children's basic needs throughout their lives, including before entry of the child support order.

[25] The record contains scant evidence of K.C.'s interaction and interrelationship with Johnson. Mother admits that she violated the trial court's November 2019 order prohibiting contact between K.C., Mother, and Johnson. Mother testified, however, that K.C. did not have contact with Johnson when Mother parked outside Johnson's residence, collected money from him, and left the premises without exiting her vehicle. According to Mother, Johnson did not speak to or otherwise interact with K.C. during the transaction. Father presented no evidence to contradict Mother's testimony. Accordingly, we find no substantial change regarding this factor.

[26] Beyond the foregoing facts, no additional evidence was presented regarding the fifth factor—K.C.'s adjustment to her home, school, and community; thus, there is no substantial change regarding this factor. The sixth factor involves the mental and physical health of the parties and the child. As noted above,

Indiana law requires the policy of stability to guide a trial court's consideration of a petition to modify custody. *Williamson,* 825 N.E.2d at 41. Although no evidence was presented regarding the mental and physical health of the parties, save Mother's pregnancy, the trial court was able to glean the emotional impact of the evidentiary hearing on K.C. We find no substantial change regarding this factor.[5]

[27] Based on the foregoing, Father has failed to carry his burden. We, therefore, cannot find that the trial court's determination that Father did not prove a substantial change in at least one of the Indiana Code Section 31-14-13-2 factors is against the logic and effect of the facts and circumstances before the court. *See Sutton*, 16 N.E.3d at 485. The trial court did not abuse its discretion.

### III. *In Camera Interview*

[28] Lastly, Father argues that the trial court erred in declining to conduct an in camera interview of K.C. Indiana Code Section 31-14-13-3 provides:

> (a) The court may interview the child in chambers to ascertain the child's wishes.
>
> (b) The court may permit counsel to be present at the interview.

---

[5] There is no evidence in the record regarding the final two factors, evidence of a pattern of domestic or family violence by either party or evidence that the child has been cared for by a de facto custodian.

(c) If counsel is present at the interview, a record may be made of
the interview and made part of the record for purposes of appeal.[6]

[29] Our Supreme Court has held:

> . . . In cases where child custody is in issue, *and with the parties'*
> *consent*, confidential interviews between the court and the
> children involved should be encouraged where the minors are of
> sufficient age and understanding.  Such a procedure better
> enables the trial court to ascertain the best interests of the child,
> because the constraints of open court with both parents and
> witnesses present are lifted.

*Blue v. Brooks*, 261 Ind. 338, 342, 303 N.E.2d 269, 272 (1973) (emphasis added).

[30] Here, the trial court did not conduct an in camera interview because Mother would not consent to an in camera interview.  Instead, the trial court found that Mother, who was proceeding pro se, was entitled to "ask questions" of any witness that sought to contradict her testimony.  *See* Tr. Vol. II p. 19.  The in camera interview statute, however, does not require parental consent.  The trial court ordered[7] K.C. to appear in court; however, when K.C. appeared, she was unable to testify.  The trial court did not err in declining to conduct an in camera interview under these circumstances.  Moreover, because the wishes of

---

[6] We note that Indiana Code Section 31-17-2-9, involving actions for child custody and modification of child support orders, differs from Indiana Code Section 31-14-13-3.  We fail to understand why the General Assembly has elected to write differing statutes regarding in camera interviews.

[7] We caution parents and trial courts regarding the practice of ordering seven-year-old children to appear and testify in custody proceedings.

a child under fourteen years of age are given less consideration in custody modification proceedings, *see* I.C. § 31-14-13-2(3), and K.C. was not in a position to meaningfully contribute, the trial court's exercise of discretion, here, was not an abuse of discretion in light of K.C.'s youthful age and the scant evidence related to a modification of custody.

# Conclusion

[31] The trial court did not abuse its discretion in denying Father's petition for emergency custody. Nor did the trial court err in declining to conduct an in camera interview. We affirm.

[32] Affirmed.

Kirsch, J., and Pyle, J., concur.