

**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

FILED

Oct 22 2013, 5:27 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**JAMES JOHNSTON**
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**J. KATHRYN JENKINS**
Law Office of J. Kathryn Jenkins
Carmel, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

|  |  |  |
|---|---|---|
| JAMES W. JOHNSTON, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No.  49A02-1302-DR-142 |
| | ) | |
| DIANA JOHNSTON, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Timothy W. Oakes, Presiding Judge
Caryl F. Dill, Magistrate
Cause No. 49D13-9905-DR-726

**October 22, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

The appellant-petitioner James W. Johnston (Father) presents us with a myriad of alleged errors that the trial court committed in this post-dissolution of marriage action that deals primarily with his child support obligation. Father complains that the trial court improperly calculated his income and erred in imputing a certain amount of additional income to him for child support purposes that involved the children born during his marriage to his former wife, appellee-respondent Diana Johnston (Mother).

Father also contends that the trial court erred in determining that he was underemployed, that it improperly disallowed him from claiming certain business expenditures, and that it should not have incorporated some of Mother's findings of fact and conclusions of law in its order. Father further maintains that the court reporter should not have destroyed certain notes and exhibits before he filed his notice of appeal, and that his child support order was subject to retroactive modification.

Mother prevails, and we sua sponte observe that the trial court should not have even considered various issues that Father presented that related to a July 2011 order that had been entered because it was never appealed in a timely fashion. In light of our discussion below, we affirm the judgment of the trial court.

FACTS

On April 11, 2000, the parties were divorced pursuant to a Summary Decree of Dissolution (Summary Decree) that incorporated the parties' agreement of property settlement and for child custody and support. Three children were born to the marriage: Lisa, Jennifer, and Jacob. The Summary Decree was later modified, and on July 9, 2009,

Father filed a verified petition to modify child support, stating that he was earning substantially less income. The trial court accordingly modified Father's child support obligation. The certified child support docket shows that Father failed to pay any support between June 2009 and August 8, 2009. Mother filed a motion for rule to show cause regarding Father's non-payment of support.

Father began paying lesser amounts of support than the trial court had ordered. However, he eventually began paying the full amount for the first time since May 2009. Father testified that he did not pay support as ordered because he had to pay other expenses including taxes and attorney fees.

Husband's 2009 tax return showed that he earned $280,000 that year, which amounted to $5,385 per week. Husband testified that when he stated in his verified petition to modify support that his income had changed substantially, he was anticipating that his income was going to decline substantially, but the evidence demonstrated that his income actually exceeded his 2008 income.

Mother's tax return for 2009 showed that she earned $24,108 for that year or $464 per week. The trial court did not impute additional income to Mother because she testified that she had not been able to pay her mortgage. Wife continued to provide health insurance for the minor children in 2009 at a cost of $20.29 per week and in 2010 at a cost of $34.39 per week.

On November 16, 2009, Father received an offer from Fuller Engineering (Fuller) to be a sales engineer for a new territory in a letter that Father and four owners of the

3

company signed. Father verified that he was losing his current job even though he had already agreed to sell for Fuller in a new sales territory.

Father claimed large amounts of business expenses for 2010 including introducing a contract with his fiancee, where he agreed to pay her 40% of his gross receipts even though he testified that she also had a full time job elsewhere. Many of Father's other business expenses were claims for restaurant meals that were not documented as business expenses as required by the Internal Revenue Service.

The trial court modified Father's child support obligation to $211 per week as of January 2010 to be withheld from compensation that Husband paid to himself from his company. Father was also ordered to pay $500 per month regarding an accrued child support arrearage that the trial court determined to be $5,474, as of January 10, 2011. Father was found to be in contempt for his willful refusal to pay child support to Mother.

At a hearing that commenced on July 23, 2012, the first issue considered pertained to a motion to correct error that Father had filed regarding an order that the trial court had entered on July 20, 2011. The trial court had conducted a hearing on January 14, 2011, and continued it to February 14, 2011, that resulted in the order of July 20, 2011, that dealt with or resolved some of the issues that are presented in this appeal. These included:

1. The denial of Husband's petition to modify child support for the year 2009 but modifying his support obligation beginning in January of 2010.

2. A determination that the refusal by Husband to pay child support to Wife was not caused by a lack of income but was because he chose to spend

4

his income elsewhere which resulted in a determination that he was in contempt under I.C. § 34-47-3-1.

3. The imposition of a judgment against [Husband] for attorney fees to be paid to [Wife's] attorney in the amount of $10,000.

4. The imputing of additional income to [Wife] due to the fact that she was not paying her mortgage although she was paying property taxes and insurance for her residence.

Appellant's Br. p. 12-13.

On August 19, 2011, Husband filed a motion to correct error that related to the July 20, 2011 order. Then, on August 22, 2011, Husband filed another verified petition to modify child support. Wife filed a motion for rule to show cause on December 12, 2011, relating to Husband's failure to pay child support as ordered. These motions were all heard on July 23, 2012. The trial court denied Husband's motion to correct error.

Also at the July 23 hearing, Father's business records from Fuller were introduced into evidence and contained communications between Husband and Damien Neeld, one of the owners of the company. When Father was questioned about these exchanges, Father confirmed that he had received the communication from Neeld and had responded with an email on March 17, 2011, that was also included in the business records from Fuller. Neeld's letter states that the terms for Father's continued employment with Fuller in 2011 had not changed in six or seven years and that Father's "reluctance to be subject to those terms was mystifying if not completely baffling." Appellee's App. p. 165.

Fuller's business records for 2011 established that Father earned $23,005.84 in commissions during the first four months of 2011. Father terminated his relationship

5

with the company on February 20, 2011, as stated in his verified petition to modify child support and in his email dated March 17, 2011.

Evidence was introduced that pertained to the contractual agreement between Johnston Technology Group and Father's subsequent employer, Level Solutions LLC, which was signed by Jodie Johnston (Webb) (who was now married to Father), as an officer of the Johnston Technology Group (Johnston). This agreement also contains non-compete provisions even though Father stated that his primary reason for refusing to sign with Fuller in early 2011 was the non-compete provisions in Fuller's contractual agreement. Jodie testified that Father explained to her that he was angry with Fuller because he had not been offered a partnership position with the company.

Father testified that he was receiving a draw against future commissions of $4,000 per month from Level Solutions. The draw was paid to Johnston, and Jodie was the principal of that company. Father and Jodie divorced in June 2012.

A copy of Husband's 1099 form from Level Solutions indicating that he had received non-employee compensation of $20,000 in 2011 was admitted into evidence. Husband introduced his 2011 federal tax return showing an adjusted gross income of $82,645, including a distribution from his retirement account.

The resulting child support calculations using Mother's 2011 weekly income was found by the trial court to be $721.90, and the potential weekly income for Father of $2,655 did not result in a twenty percent deviation in child support as required by Indiana

6

Code section 31-16-8-1 from the amount that the trial court had ordered on July 20, 2011. Thus, the petition for modification of support for 2011 was denied.

Jodie testified that she notified Level Solutions on March 8, 2012, that Johnston Technology was being dissolved. That correspondence also indicated that Father's contractual relationship with Level Solutions should not change.

Father testified that he and Jodie had vacationed in the Virgin Islands within the past year, and that she had paid all of the expenses related to the trip. Father sold his Carmel residence and submitted the closing statement into evidence establishing that he had received $62,612.48 from the sale. Father testified that he had given the proceeds from the sale to Jodie.

Conversely, Jodie testified that the trip to the Virgin Islands was paid for with proceeds that Father received from the sale of his residence and that he purchased a motorcycle and a vehicle for himself with those funds. However, Jodie testified that Husband had the vehicle titled in her name. Jodie also testified that Father told her during their marriage to place only $300 at a time in his Credit Union Account from the money paid to Johnston Technology, so that his bank records would not reflect the actual amount of money that was generated.

Jodie testified that Father informed her that he paid child support to a woman by the name of Dana Conroy, the mother of his subsequent child, in Hamilton County because he was afraid that the trial court in that case would incarcerate him. Father introduced a docket sheet into evidence demonstrating his payments to her, which

7

indicated that he made regular child support payments in that case. Father made a payment of $3,355.02 in June 2012, to support his youngest child. Father also offered his own 2010 federal tax return into evidence showing $155,000 in income to him from Fuller was more than the amount that the trial court used in calculating its more recent support amount based on Father's earnings of $141,284.

A final order dated June 14, 2012, from Hamilton Superior Court 2 was introduced into evidence. In that Order, the Hamilton County Judge found that the income figures that Father presented to the Hamilton County Courts in multiple hearings in his paternity case were not accurate. While Father initially claimed that he had no income, the evidence showed that he spent $800 per month making cold calls around the State. The Hamilton County Court further found that Father spent funds for traveling and expenses rather than paying child support as ordered and that his conduct was willful and wanton and sentenced him to thirty days in the Hamilton County Jail with a cash bond of $6,070. Father's bond was paid, and he spent less than twenty-four hours in jail. This bond was applied to his child support arrearage.

The parties stipulated that Lisa, one of the children, was emancipated as of January 1, 2012, and no longer resided with either parent. Child support was modified as of January 2012 to reflect that Lisa was emancipated. The trial court included a child support calculation from its order of July 20, 2011, which indicated that the amount of $255.42 was owed by Father to Mother for Jacob and Jennifer, the two youngest children (with Lisa then residing with Father). The trial court continued this child support order

8

for Jacob and Jennifer owed by Father to Mother from January 1, 2012, until July 31, 2012.

The certified child support docket shows that Father paid no support in this case from February 9, 2011, until August 26, 2011. He also made no support payments between October 31, 2011, and July 19, 2012, a period of nearly nine months. As a result, Father was ordered to make payments on his arrearage at the rate of $500 per month in addition to regular support, but he failed to do that as well. Father's arrearage as of July 23, 2012, amounted to $19,675.18.

In an order dated January 31, 2013, the trial court determined, among other things, that projecting Father's income that he could have earned from Fuller based on his two months of income in 2011 would result in a weekly income of $2,655 per week. Thus, the trial court held that it was appropriate to include this potential income for Father in calculating child support for 2011.

The trial court determined that child support should be modified as of January 2012 to reflect that Lisa is emancipated as stipulated by the parties and child support is calculated for Jacob and Jennifer with an alternating week schedule. The trial court made a child support calculation in its order of July 20, 2011, which indicated that the amount of $255.42 was owed by Father to Mother for the two youngest children.

The trial court found that Mother's weekly income based on her financial declaration and attached paystubs was $592, with an additional $200 per week imputed to her because she did not make her mortgage payments to a company in which her mother

9

has an ownership interest. Thus, the trial court determined that $792 per week should be used as Mother's income for child support purposes. It then determined that Father's income should be his potential income of $2,654 per week.

The trial court found that during the period that it last heard evidence in January and February 2011 through December 2011, Father received income from Fuller Engineering in the amount of $23,006.84, from Level Solutions LLC of $20,000, net proceeds from the sale of his residence in excess of $60,000 and that he took a distribution from his retirement account in the amount of $56,625. Therefore, Father had total financial resources available to him in the amount of $173,250.

During that same period, Father paid child support to Mother in an amount totaling $3,756, while at the same time traveling to the Virgin Islands, buying a vehicle and a motorcycle, and paying child support much more regularly and in larger amounts for his youngest child.

Because the trial court also determined that Father's income should include his potential income of $2,654 per week, it calculated Father's current child support obligation at $166 per week, beginning August 1, 2012. Because Father made non-essential expenditures and his failure to pay child support occurred after he had received the trial court's order of July 20, 2011, he was found in contempt of court. The trial court calculated Father's arrearage to be $19,675.18, as of July 23, 2012.

Based on the above, the trial court entered the following judgment:

1. Father's motion to correct error in this court's order of July 20, 2011, is denied.

2. Father's petition to modify child support that was filed in August 2011, is denied for 2011.

3. Child Support is modified for 2012 because of the emancipation of the oldest child, Lisa. Father is ordered to pay child support to Mother for the two younger children in the amount of $255 per week through July 31, 2012.

4. Child support is modified as of August 1, 2012, and as of that date, Father shall pay to Mother the amount of $166 per week in child support. Father's child support shall be withheld from his compensation received, including any draws he receives. . . .

5. In addition to current support, Father shall pay $500 per month on the accrued arrearage of $19,675.18 which is his arrearage owed as of July 23, 2012.

* * *

8. Father shall pay attorney fees . . . in the amount of $8,424. . . .

At some point before Father filed his notice of appeal, the court reporter inadvertently destroyed various items and notes that pertained to the trial. However, none of the exhibits that were admitted at trial were destroyed. Father now appeals.

DISCUSSION AND DECISION

I. Standard of Review

When, as here, a judgment contains specific findings of fact and conclusions of law thereon, we apply a two-tiered standard of review. Bester v. Lake Cnty. Office of Family & Children, 839 N.E.2d 143, 147 (Ind. 2005). We determine first whether the evidence supports the findings and second whether the findings support the judgment. Id. "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." Quillen v. Quillen, 671 N.E.2d 98, 102 (Ind.1996). If

11

the evidence and inferences support the juvenile court's decision, we must affirm.  In re

L.S., 717 N.E.2d 204, 208 (Ind. Ct. App. 1999).  Finally, we note that the judgment comes to

us clothed with the presumption that it is correct and the appellant has the burden of

establishing error.  Jones v. First Nat'l Bank,  143 Ind. App. 243, 249, 239 N.E.2d 398,

402  (1968).

## II.  Accuracy of Findings of Fact and Conclusions of Law; Sufficiency of the Evidence

### A.  Father's Voluntary Underemployment

Father first argues that the evidence presented at the hearing failed to show that he

was voluntarily underemployed.  Specifically, Father contends that his income for child

support purposes should be based on the income that he actually earned and not what was

imputed to him.  Father contends that he is "currently working in the same industry where

he has been working for most of the past twenty-three years but is experiencing lower

income due largely to the slow economy."  Appellant's Br. p. 13.

Our Child Support Guidelines provide that if a parent is voluntarily

underemployed, the trial court must calculate child support by determining the parent's

potential income.  Ind. Child Support Guideline 3(A)(3).  Potential income is to be

determined on the basis of "Employment potential and probable earnings level based on

the obligor's work history, occupational qualifications, prevailing job opportunities, and

earnings levels in the community.  Id.

The purpose for including potential income is to "discourage a parent from taking

a lower paying job to avoid the payment of significant support."  Id., comment 2c.   The

trial court has broad discretion in imputing income to a parent so that the parent cannot evade a support obligation. Glover v. Torrence, 723 N.E.2d 924, 935 (Ind. Ct. App. 2000).

In this case, the evidence established that Father had a contractual relationship with Fuller since 1999 and had earned incomes of $280,000 in 2009 and $160,100 in 2010 from that company. Appellee's App. p. 132, 194. Fuller offered Father a contract for 2011 with the same territory that he had worked in 2010. As discussed above, the records from Fuller contained correspondence from Neeld, one of Fuller's owners, expressing surprise and confusion as to the reasons Father had supplied for not signing the 2011 contract. Tr. p. 419-21. Although Father advances claims in his appellate brief as to the great lengths of time involved for equipment to be shipped, invoiced, and paid for, as a reason for not continuing his employment with Fuller, he did not testify to that effect at the hearing. Appellee's Br. p. 13. Moreover, the statement in Father's verified petition to modify child support that he voluntarily terminated his relationship with Fuller in February 2011 supports the trial court's finding that Father chose to discontinue his business relationship with Fuller. Thus, it is apparent that the trial court considered and weighed Father's testimony and judged his credibility about why he left his relationship with Fuller. In short, the trial court's determination of Father's potential income based on his work history with Fuller and his earnings history is supported by the evidence. Thus, we decline to set aside the trial court's ruling on this issue.

### B. Business Expenses

Father next contends that the trial court erred in placing a cap of expenses on his business activities. Father claims that the trial court erred because "no detail of any particular expense receipts were submitted into evidence as inappropriate." Appellant's App. p. 24.

Child Support Guideline 3(A)(2) requires that "income and expenses from self-employment or operation of a business [should] be carefully reviewed to restrict the deductions to reasonable out-of-pocket expenditures necessary to produce income."

Notwithstanding Father's contention, the trial court, after hearing the evidence, concluded that Father's testimony on this issue was not credible and that "he was attempting to inflate business expenses unreasonably to reduce the income that the Court might find." Tr. p. 330.

By way of illustration, we note that in Thompson v. Thompson, this Court articulated the necessity, when reviewing expenses to reduce a parent's weekly gross income from self-employment, that a trial court carefully review and reduce certain expenses that would otherwise constitute legitimate income tax deductions. 811 N.E.2d 888 (Ind. Ct. App. 2004). More particularly, the Thompson court observed that

> When determining child support, a trial court is vested with discretion in considering what business deductions may be deducted from gross income. Zakrowski v. Zakrowski, 594 N.E.2d 821, 824 (Ind. Ct. App. 1992) (citing Cox v. Cox, 580 N.E.2d 344, 351 (Ind. Ct. App. 1991). . . . However, with regard to business deductions, the calculation of a parent's income for support purposes is more inclusive than it is for income tax purposes. Clark v. Madden, 725 N.E.2d 100, 107 (Ind. Ct. App. 2000) (citing Weiss v. Frick, 693 N.E.2d 588, 591 (Ind. Ct. App. 1998). . . .

14

> Specifically excluded from ordinary and necessary expenses for the purpose of [the Guidelines] are depreciation, investment tax credits, or any other business expense determined by the court to be inappropriate for determining weekly gross income for the purpose of calculating child support. In general, these types of income should be carefully reviewed. In most cases, this amount will differ from a determination of business income for tax purposes.

Id. at 924.

In this case, the trial court had the discretion to ignore payments alleged by Father to be business expenses which it found not to be legitimate business expenses. That said, it is reasonable to assume that the inference that the trial court drew from the evidence of unsubstantiated meal expenses, disproportionate payments for the work performed by Jodie, and excessive salaries paid to Dana Conroy, his girlfriend at the time, was that not all of his business expenses were legitimate for the purpose of calculating his income. Tr. p. 36, 157, 162-64, 184-85. As a result, we decline to disturb the trial court's decision on this issue.

### C. Calculation of Father's Potential Weekly Gross Income

Father next argues that the trial court erroneously calculated his potential weekly gross income at $2,654. Notwithstanding this contention, there is no evidence that the trial court improperly applied the child support guidelines after determining that Father was voluntarily underemployed, that his alleged expenses from self-employment were

unreasonably large and should be capped, and his weekly gross income should total $2654.

In fact, it was established that the trial court correctly followed the guidelines and had ample evidence before it of Father's employment history with Fuller based on what he had earned in 2010 to attribute potential income of $2,654 to Father. Thus, Father does not prevail on this claim.

### III. Structure of Findings of Fact and Conclusions of Law

Father next claims that the trial court erred when it substantially adopted Mother's proposed findings of fact and conclusions of law in its order. Father argues that the adoption of those proposed findings of fact and conclusions of law was improper and supports his claim that the judgment was erroneous and should be set aside.

Indiana Trial Rule 52(C) provides that "In any case where special findings of facts and conclusions thereon are to be made the court shall allow and may require the attorneys of the parties to submit to the court a draft of findings of fact and conclusions thereon which they propose or suggest that the court make in such a case."

Trial Rule 52(C) encourages trial courts to request that parties submit proposed findings of fact and conclusions of law, and it is not uncommon or per se improper for a trial court to enter findings that are verbatim reproductions of submissions by the prevailing party. Clark v. Crowe, 778 N.E.2d 835, 841 n.3 (Ind. Ct. App. 2002). When preparing proposed findings, a party "should take great care to insure that the findings are sufficient to form a proper factual basis for the ultimate conclusions of the trial court."

16

Marathon Oil Co. v. Collins, 744 N.E.2d 474, 477 n.2 (Ind. Ct. App. 2001). Moreover, "the trial court should remember that when it signs one party's findings, it is ultimately responsible for their correctness." Id. As noted by this Court in Clark, we urge trial courts to scrutinize parties' submissions for mischaracterized testimony and legal argument rather than the findings of fact and conclusions of law as contemplated by the rule. 778 N.E.2d at 841 n.3.

However, as has also been observed, verbatim reproductions of a party's submissions are not uncommon, because "[t]he trial courts of this state are faced with an enormous volume of cases and few have the law clerks and other resources that would be available in a more perfect world to help craft more elegant trial court findings and legal reasoning." Prowell v. State, 741 N.E.2d 704, 708 (Ind. 2001). The need to keep the docket moving is properly a high priority for our trial bench. Id. at 709. For this reason, the practice of adopting a party's proposed findings is not prohibited. Id. Our inquiry on appellate review in that situation is whether such findings, adopted by the trial court, are clearly erroneous. Piles v. Gosman, 851 N.E.2d 1009, 1012 (Ind. Ct. App. 2006).

In this case, the record indicates that the trial court scrutinized the proposed findings. Thus, the trial court's adoption of the majority of Mother's proposed findings is not, in and of itself, error. Hardebeck v. Hardebeck, 917 N.E.2d 694, 698 (Ind. Ct. App. 2009). As a result, we cannot say that Father has shown that the trial court's adoption of Mother's proposed findings, with revisions, constituted error or resulted in an unfair or

17

biased proceeding. Thus, the trial court's adoption of Mother's proposed findings of fact and conclusions thereon was not error.

## IV. Destruction of Exhibits

Father next argues that various exhibits that the court reporter inadvertently destroyed before Father filed his notice of appeal should invalidate the trial court's decision or the evidence that the trial court considered in entering its findings of fact and conclusions of law.

First, we note that it is impossible to determine, in retrospect, what the trial court might have considered in its trial notes when deciding what facts and conclusions to enter. Moreover, the exhibits that have been made available by counsel representing both parties and the transcript identifies those that were admitted at trial. Appellant's App. p. 90. Additionally, Father presents no evidence establishing how he was harmed or prejudiced by the various notes and other documents that the court reporter had inadvertently destroyed prior to Father's filing of his appeal.

## III. Modification of Prior Support Orders

Father contends that the trial court should have recalculated his child support "retroactive to the date of the first filing after [Mother] refinanced her home." Appellant's Br. p. 29. Notwithstanding his contention, our Supreme Court considered the appropriateness of the retroactive modification of child support in Whited v. Whited:

> [A]fter support obligations have accrued, a court may not retroactively reduce or eliminate such obligations. . . . [citations omitted]. We reaffirmed this bright-line rule in Nill v. Martin, 686 N.E.2d 116, 117 (Ind.

18

1997), holding that a parent subject to a support order must make payments in accordance with that order until the court modifies and/or sets aside the order.

859 N.E.2d 657, 661 (Ind. 2007).

This Court has also noted the applicable law regarding retroactive modification of a child support order as follows:

A trial court has discretion to make a modification of child support relate back to the date the petition to modify is filed, or any date thereafter. [Citations omitted]. "The general rule in Indiana is that retroactive modification of support payments is erroneous if the modification relates back to a date earlier than the filing of a petition to modify." Donegan v. Donegan, 605 N.E.2d 132, 133 n.1 (Ind. 1992). . . . And Indiana courts have long held that, "after support obligations have accrued, a court may not retroactively reduce or eliminate such obligations." Whited v. Whited, 859 N.E.2d 657, 661 (Ind. 2007). The modification of a support obligation may only relate back to the date the petition to modify was filed, and not an earlier date, subject to two exceptions not applicable here.

Becker v. Becker, 902 N.E.2d 818, 820 (Ind. 2009).

When considering the above, it is apparent that the trial court would have erred had it taken the action that Father requests in modifying child support to a date earlier than July 2, 2009—the date on which he filed his petition. As a result, Father's argument fails.

V. Portion of Appeal that Relates to July 20, 2011

Finally, we note, sua sponte, that on August 19, 2011, Father filed his motion to correct error that related to the July 20, 2011 order. Trial Rule 53.3(A) provides that

In the event a court fails for forty-five (45) days to set a Motion to Correct Error for hearing, or fails to rule on a Motion to Correct Error within thirty (30) days after it was heard or forty-five (45) days after it was filed, if no hearing is required,

19

the pending Motion to Correct Error shall be deemed denied. Any appeal shall be initiated by filing the notice of appeal under Appellate Rule 9(A) within thirty (30) days after the Motion to Correct Error is deemed denied.

In this case, the Chronological Case Summary (CCS) entry reflects that on August 29, 2011, the trial court set Father's motion for a hearing at a later date. Appellant's App. p. 22. Thereafter, on October 12, 2011, after several continuances, the trial court again continued the motion "to be reset after mediation is completed." Id. at 23. The CCS entry establishes that the report on mediation was filed with the trial court on February 24, 2012. Id. at 24. Thus, February 24 was the date that commenced the running of the forty-five day period under Trial Rule 53.3(A).

The hearing on the motion was not set until May 18, 2012, seventy-nine days after the filing of the mediation report with the court, which was well outside of the forty-five day period. This court in Williamson v. Williamson has held that "after granting a continuance, a trial court is required to set a new hearing date on a motion to correct error within forty-five days." 825 N.E.2d 33, 46 (Ind. Ct. App. 2005). And because the "deemed denied" provisions of Indiana Trial Rule 53.3 are automatic and "self-activating upon the passage of the requisite number of days," the trial court could not rule on Mother's motion to correct error because the motion had already been deemed denied. Id. at 48.

In this case, Father's motion was deemed denied under Trial Rule 53.3(A), on April 8, 2012, which was forty-five days after February 24, 2012. And Appellate Rule 9(A)(1) provides that "a notice of appeal must be filed within thirty (30) days after the

20

court's ruling on such motion [to correct error] is noted in the CCS or thirty (30) days after the motion is deemed denied under Trial Rule 53.3, whichever occurs first." Because Father's motion was deemed denied on April 8, 2012, he had thirty days after that date—until May 8, 2012—to file his notice of appeal with respect to the trial court's order of July 20, 2011. He failed to do so.

Instead, Father filed his notice of appeal on February 11, 2013, over nine months after the deadline to file a notice of appeal regarding the July 20, 2011 order. So, when the trial court denied Father's motion in open court on July 23, 2013, it had no power to rule on the motion because it had already been deemed denied. As a result, we dismiss the portion of Father's appeal that concerns the July 20, 2011 order.

The judgment of the trial court is affirmed.

FRIEDLANDER, J., and VAIDIK, J., concur.